OPINION OF THE COURT
 

 Titone, J.
 

 A jury convicted defendant of the crimes of the unlawful practice of law and petit larceny. The question in this case is whether the Attorney-General had the authority under Judiciary Law § 476-a (1) to prosecute defendant for these crimes. Although section 476-a (1) directly authorizes the Attorney-General to bring an “action” against those whom he believes are engaged in the unlawful practice of law, we conclude, based on the language and legislative history of sections 476-a and 476-b, that the word “action” in the statute refers only to a civil action. Accordingly, we reverse.
 

 I.
 

 Defendant Israel Romero, an attorney in Honduras, applied for and was admitted by the Third Department to practice pro hac vice from December 2, 1991 to June 2, 1993 connected with a project at the State Street Presbyterian Church in Schenectady. Some two months after June 1993, defendant was approached at the church by a woman who requested his services as attorney in her divorce. Thereafter, defendant took $750 from the woman, gave her a receipt, and prepared various divorce documents that listed her, under the signature line, as a “pro se plaintiff.” Defendant apparently told her when
 
 *753
 
 questioned that this designation was a legal term for signature, rather than an indication that she was unrepresented by an attorney. The woman came to realize what “pro se” meant after a conversation with the Saratoga County Judge’s chambers and that defendant was not representing her in the divorce action even though he had taken money to be her attorney.
 

 The Attorney-General presented the matter to the Grand Jury on November 30, 1995, which that same day indicted defendant on one count of each of three charges: offering a false instrument for filing in the first degree (a charge that was dismissed before trial); unauthorized practice of law (Judiciary Law § 478); and petit larceny (Penal Law § 155.25). Defendant moved to dismiss the indictment, contending, among other things, that the Attorney-General lacked authority under Judiciary Law § 476-a to prosecute the case. The trial court denied the motion and agreed with the Attorney-General that section 476-a provided the authority to prosecute these crimes. After a jury trial, defendant was convicted of the crimes of the unlawful practice of law and petit larceny, and sentenced.
 

 On appeal to the Appellate Division, defendant again argued that the Attorney-General had no authority to prosecute under Judiciary Law § 476-a. The Attorney-General again countered this argument, and for the first time in the case, raised the alternative of Executive Law § 63 (3) as providing the Attorney-General with prosecutorial authority. The Appellate Division adopted these alternative grounds for affirmance. It held “[assuming, arguendo, that defendant is correct in maintaining that Judiciary Law § 476-a only authorizes the Attorney-General to maintain a
 
 civil
 
 action against an individual accused of the unlawful practice of law and not a criminal action * * * the Attorney-General was authorized to prosecute the subject charges under Executive Law § 63 (3)” (244 AD2d 670, 671-672). A Judge of this Court granted defendant leave to appeal.
 

 II.
 

 At the outset, we note that the Attorney-General’s alternative grounds for affirmance based on Executive Law § 63 (3) were not reviewable by the Appellate Division and are not reviewable here. Under CPL 470.15 (1) the Appellate Division can only review errors or defects that “may have adversely affected the appellant” in the criminal court (CPL 470.15 [1];
 
 see, People v Goodfriend,
 
 64 NY2d 695, 697-698). The applicability of Executive Law § 63 (3), as the Attorney-General now
 
 *754
 
 concedes, was not ruled upon in the criminal court action from which appeal was made, and, as a result, appellant could not have been “adversely affected” by a criminal court ruling on the issue. The Appellate Division could not have reviewed the point. This Court, in turn, can review those questions of law raised or considered in the Appellate Division or those involving any error or defect in the criminal court proceedings that resulted in the criminal court judgment
 
 (see,
 
 CPL 470.35). Since the question of Executive Law § 63 (3) could not have been raised in the Appellate Division, the only issue before us on this appeal is whether Judiciary Law § 476-a conferred prosecutorial authority on the Attorney-General as this issue was raised and ruled upon in the criminal court proceeding
 
 (see, People v Goodfriend, supra,
 
 64 NY2d, at 698).
 

 III.
 

 Although the District Attorneys have plenary prosecutorial power in the counties where they are elected, the Attorney-General has no such general authority and is
 
 “without any prosecutorial power
 
 except when specifically authorized by statute”
 
 (Della Pietra v State of New York,
 
 71 NY2d 792, 797;
 
 see,
 
 County Law §§ 700, 927). The Attorney-General contends that the specific authorization in this case comes from Judiciary Law § 476-a, which provides that the “attorney-general may maintain an action upon his own information * * * against any person [or entity] * * * who commits any act or engages in any conduct prohibited by law as constituting the unlawful practice of law” (Judiciary Law § 476-a [1]). Even though the statute does not explicitly authorize a criminal prosecution, the Attorney-General interprets the word “action” to encompass both a criminal and a civil action. No case, however, supports the Attorney-General’s position. Those dealing with section 476-a either involved a civil action
 
 (New York Criminal & Civ. Cts. Bar Assn. v Jacoby,
 
 61 NY2d 130) or limited section 476-a, without discussion, to a civil action
 
 (Lawrence v Houston,
 
 172 AD2d 923, 924;
 
 People v Enfeld,
 
 136 Misc 2d 252, 253). Although Judiciary Law § 485 makes the unlawful practice of law, as defined by Judiciary Law § 478, a misdemeanor, this Court has gone only so far as to note that the Attorney-General can enforce section 478 “in civil actions” under Judiciary Law § 476-a
 
 (El Gemayel v Seaman,
 
 72 NY2d 701, 706).
 

 Having no case authority, the Attorney-General relies primarily on the use of the word “action” in the statute. Although in general legal usage, as the Attorney-General argues, the
 
 *755
 
 word “action” can imply a criminal as well as a civil action, the specific use of that word in Judiciary Law § 476-a (1) does not appear to connote more than a civil action based on the statutory provisions that accompany it. For instance, Judiciary Law § 476-a (2) provides: “Such an action may also be maintained by a bar association organized and existing under the laws of the state.” To read the word “action” in section 476-a (1) to encompass a criminal action would mean that a Bar association could prosecute crimes, and, as a corollary matter, could also convene Grand Juries and issue subpoenas. Such a conclusion would be contrary to the fundamental principle that the power to prosecute crimes is traditionally a power of the State as sovereign
 
 (see, Della Pietra v State of New York, supra, 71
 
 NY2d, at 796-797). In view of this principle, we are unwilling to impute to the Legislature an intent to award such authority to a private entity such as a Bar association without more explicit reference.
 

 Nor can the Attorney-General interpret “action” in section 476-a (1) to mean both civil and criminal actions, while at the same time, define the “action” in section 476-a (2), which applies to Bar associations, to mean only civil actions. Section 476-a (2) states that “[s]uch an action” may be brought by the appropriate Bar association. The use of “such” clearly refers to the same action that the Attorney-General can bring in section 476-a (1). Moreover, section 476-a (2) indicates that the Bar association can bring the action in the place of the Attorney-General if he fails or refuses to act, lending more credence to the conclusion that the “actions” in both subdivisions are the same
 
 (see,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 236, at 401).
 

 An interpretation limiting section 476-a to civil actions is further buttressed by the fact that Judiciary Law § 476-b mandates a traditional civil remedy for successful action under section 476-a. Section 476-b provides: “In an action brought as prescribed in section four hundred seventy-six-a, the final judgment in favor of the plaintiff shall perpetually restrain the defendant from the commission or continuance of the act complained of.” Notably, the Attorney-General does not address this point, but a review of the law of injunctions leads to the conclusion that the injunction in section 476-b is not a penalty for a criminal conviction, but instead is the result of civil action additional to any criminal sanctions
 
 (see generally, People ex rel. Bennett v Laman,
 
 277 NY 368).
 

 Traditionally, because equity had no criminal jurisdiction, the equitable remedy of an injunction would not be used to
 
 *756
 
 enforce the criminal law
 
 (see,
 
 55 NY Jur 2d, Equity, § 49). Nonetheless, the mere fact that acts may be criminal, and give rise to criminal penalties, did not deprive equity of its jurisdiction to issue an injunction prohibiting those same acts where the need to do so existed
 
 (see, People ex rel. Bennett v Laman, supra,
 
 277 NY, at 381-382;
 
 see generally,
 
 67 NY Jur 2d, Injunctions, §§ 99, 100). Under
 
 Bennett,
 
 the critical inquiry in this regard was “whether, under the particular circumstances, equitable intervention [wa]s necessary to give adequate protection to the interest invaded or whether justice w[ould] be best served by relegating the parties to the criminal court”
 
 (id.,
 
 at 381). In
 
 Bennett,
 
 this Court conducted this inquiry to determine the propriety of enjoining a chiropractor from the unlawful practice of medicine. The Court held that although local criminal juries were unwilling to convict this individual, equitable intervention was necessary to adequately protect the real danger to public health that this individual presented. Thus, in spite of the criminal law, the chiropractor could be enjoined in a civil action from committing acts harmful to the public. Significantly,
 
 Bennett
 
 mentioned the predecessor statute of Judiciary Law § 476-a, section 1221-a of the Civil Practice Act, and noted that the unlawful practice of law was one of the particular situations in which the Legislature by statute has authorized equity to act and enjoin criminal behavior without the necessity of showing, in the individual case, that the public health or welfare was in danger. This leads inescapably to the conclusion that the section 476-b injunction is not
 
 the penalty for a criminal conviction,
 
 but instead is
 
 an additional civil means
 
 through which the Attorney-General can protect the public from harm
 
 (see also,
 
 CPLR 6330 [giving authority to enjoin sale or distribution of obscene prints and articles]).
 

 Section 476-b, furthermore, is not discretionary. If the plaintiff is successful under section 476-a, then an injunction “shall” issue under section 476-b. This leaves no room for an interpretation that an injunction could issue when a civil action is brought, but that one would not issue when “action,” under the Attorney-General’s theory, meant criminal action. The statute does not allow for such variance.
 

 The legislative history also does not help the Attorney-General’s proposed interpretation of “action.” Section 476-a is derived almost verbatim from former Civil Practice Act § 1221-a, adopted in 1935
 
 (see,
 
 Civ Prac Act § 1221-a, repealed by CPLR 10001, as added by L 1962, ch 308). This provision was moved from the Civil Practice Act to the Judiciary Law when
 
 *757
 
 the Legislature adopted the current Civil Practice Law and Rules because “matters determined to be of limited applicability” like the “unlawful practice of law” were “better found in the Consolidated Laws” (Sponsor’s Mem in Support, Bill Jacket, at 5, L 1962, ch 310 [Mar. 27, 1962]). There is no indication in any of the legislative history that this move from the Civil Practice Act was to enable the Attorney-General to bring a criminal action under Judiciary Law § 476-a. Indeed, the derivation of the statute offers a very good explanation as to why section 476-a does not explicitly state that the action to be brought by the Attorney-General is civil and not criminal. As part of the former
 
 Civil
 
 Practice Act, there was no need to be redundant and denote the action as civil.
 

 This review of the legislative history also undercuts the Attorney-General’s argument that General Construction Law former § 11-a governs our construction of “action” in Judiciary Law § 476-a. There is no doubt that General Construction Law former § 11-a, which stated that “[a]ctions are of two kinds: civil and criminal,” was in effect at the time when Judiciary Law § 476-a’s predecessor, section 1221-a of the Civil Practice Act was the controlling statute. Notably, though, the very same enactment that installed section 476-a into the Judiciary Law, also repealed General Construction Law § 11-a (see, L 1962, ch 310, § 171 [repealing General Construction Law § 11-a], § 232 [adding Judiciary Law § 476-a]). Thus, when the provision came out of the Civil Practice Act and moved into the Judiciary Law, the repealed General Construction Law § 11-a was of no interpretive use. More importantly, even if General Construction Law § 11-a were controlling here, this statute merely provides that an “action” may be civil or criminal. The definition of “action” in former section 11-a was only a very general one and its purpose was to clarify that there were only two types of actions, not that all references to “actions” must mean both civil and criminal.
 

 Finally, the many statutory provisions that the Attorney-General cites are simply not analogous. Each of these other statutory and regulatory provisions specifically authorizes the Attorney-General to prosecute crimes (see,
 
 e.g.,
 
 Business Corporation Law § 1607; Education Law § 6514; Rules of State Energy Office [9 NYCRR] § 7905.6 [d]; General Business Law §§ 85, 347, 358, 692; Labor Law § 214; Real Property Law §§ 338, 442-e, 446-h; Public Health Law §§ 2897-b, 3455; Tax Law §§ 512, 691, 1091; Workers’ Compensation Law § 132). In sharp contrast, Judiciary Law § 476-a does not contain such a
 
 *758
 
 specific reference, but only uses the word “action.” As the Legislature has on every previous occasion granted prosecutorial authority in no uncertain terms, this lack of a specific authorization in section 476-a only reinforces the conclusion that in light of its accompanying statutory provisions and its legislative history, the “action” in section 476-a is civil, rather than criminal. As a result, the Attorney-General had no authority and could not prosecute defendant for the crimes in this case. Section 476-a limited him to a civil prosecution against the defendant.
 

 Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.